**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 26 2017

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

INA JEAN LOHMANN,

    Plaintiff,

v.                                                Civil Action No: 4:17-cv-481-SWW

TRANS UNION, LLC,

| SERVE: | Prentice-Hall Corp. Sys.<br>300 Spring Building, Suite 900<br>300 Spring St.<br>Little Rock, Arkansas 72201 |

This case assigned to District Judge Wright
and to Magistrate Judge Harris

and

MID-SOUTH ADJUSTMENT CO., INC.

| SERVE: | Brad Dowler, Registered Agent<br>1000 HWY 35 N. Suite 2B<br>Benton, AR 72019 |

    Defendants.

## COMPLAINT

Plaintiff, **INA JEAN LOHMANN** (hereafter "Plaintiff" or "Mrs. Lohmann"), by counsel, for her Complaint against Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees pursuant to the 15 U.S.C. §1681 *et seq.* (Federal Fair Credit Reporting Act or "FCRA").

2. TransUnion is one of the "Big 3" consumer reporting agencies, which has a long history of consumer complaints and lawsuits alleging (and establishing) that they unreasonably mixed the credit files and information of one consumer with the credit reports of another consumer. This mixed file problem is caused by the TransUnion's overly-broad matching criteria used to sort data into a TransUnion credit file.

3. In this case, representative of numerous others, TransUnion combined or mixed the credit files of the Plaintiff with other individuals, including her daughter, even though their first names are entirely different, their dates of birth are thirty years apart and in different months, and social security numbers are different.

4. Plaintiff alleges claims against TransUnion under the FCRA, 15 U.S.C. §§1681e(b) and 1681i for its failure to reasonably ensure the maximum possible accuracy of her credit reports and to investigate and correct the Plaintiff's credit files when she disputed the inaccuracies.

5. Plaintiff alleges claims against Mid-South under the FCRA, 15 U.S.C. §§ 1681s(2)-(b) for its failure to reasonably investigate the Plaintiff's dispute and correct the inaccurate account it was reporting belonged to her. It also failed to note that the account was disputed so that future creditors would be able to see that she did not agree with Mid-South's reporting of the disputed collection account that didn't belong to her.

## JURISDICTION

6. The jurisdiction of this Court is conferred by 15 U.S.C. §1681p and 28 U.S.C. §1331.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) inasmuch as all of the Defendants do business and/or maintain offices within the boundaries of the Eastern District

of Arkansas, Plaintiff resides in the Eastern District of Arkansas, and a significant part of the Plaintiff's claims occurred in this District.

## PARTIES

8. The Plaintiff, **Ina Jean Lohmann**, is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c). At the time of the events giving rise to this Complaint, Plaintiff resided in Saline County, Arkansas.

9. **TRANS UNION, LLC** ("*Trans Union*") is a corporation authorized to do business in the State of Arkansas.

10. *Trans Union* is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). *Trans Union* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

11. *Trans Union* disburses such consumer reports to third parties under contract for monetary compensation.

12. **MID-SOUTH ADJUSTMENT CO., INC.,** ("*Mid-South*") is an Arkansas company with its principal place of business in Pine Bluff, Arkansas. Mid-South is a debt collector and regularly attempts to collect debts from consumers across the Arkansas. At all times relevant hereto, Mid-South was a "furnisher" as governed by the FCRA.

## FACTS

13. In or around December 14, 2016, Plaintiff applied for a mortgage loan with Polaris Home Funding Group, which obtained her credit report from TransUnion. Her loan application was denied based on the following reason "Poor Credit" and "no credit file." The adverse action

notice did not provide the name and address of the consumer reporting agency that provided the report.

14. After receiving the loan denial, Plaintiff reviewed her TransUnion consumer report and discovered that her TransUnion credit file contained at least 3 credit accounts that did not belong to her, including accounts with Mid-South, 1st Collection, and Education Financial ASL.

15. To make matter worse, the inaccurate accounts reflected severely derogatory entries that did not belong to the Plaintiff.

16. These reports were inaccurate. The 3 credit accounts reported by TransUnion belonged to someone other than the Plaintiff.

17. In addition to the inaccurate accounts, the TransUnion report also contained the names of two different individuals, Ja J. Luhmann and Ilona J. Lohmann. The report also contained employers, addresses, date of birth, and telephone numbers that had never belonged to the Plaintiff.

18. On December 26, 2016, Plaintiff mailed a written dispute letter to TransUnion, which she sent by certified mail.

19. In her letter, Plaintiff explained (and separately identified) that the exact accounts in her TransUnion credit report that did not belong to her.

20. Plaintiff also provided a detailed letter explaining the names, phone numbers, addresses, date of birth and employment that did not belong to her.

21. On or about January 27, 2017, TransUnion sent Plaintiff the results of the investigation it had conducted as a result of the detailed dispute she sent.

22. Upon receipt of the Investigation Results, Plaintiff was shocked to learn that after the investigation, TransUnion deleted two of the disputed accounts, but verified that the derogatory Mid-South collection account belonged to her and would remain on her credit report.

23. This verification was inaccurate, as Plaintiff had never opened the disputed account. In addition, the verified account was derogatory and reflected serious delinquency and/or charge-off.

24. Mid-South failed to conduct a reasonable investigation into the particular disputed account, thus leaving it to mar the Plaintiff's credit report.

25. Although there were two Mid-South accounts on her report, she disputed only the Mid-South account that did not belong to her.

26. Similarly, TransUnion failed to correct the inaccurate names, date of birth, addresses, telephone numbers and employer.

27. TransUnion's Investigation Results failed to indicate the disputed status of the Mid-South account that was identified in the Plaintiff's dispute letter. Upon information and belief, these accounts remained on Plaintiff's credit file after the December 2016 dispute letter.

28. These derogatory and mismatched sets of credit information severely reduced the Plaintiff's credit scores and prohibited her from obtaining a loan.

29. Upon information and belief, TransUnion's agents or employees failed to investigate all of the disputed accounts because its standard investigation procedures utilize outsource vendors in the India who are expected to perform a certain number of investigations per hour and are paid according to the quantity of disputes processed – not the quality.

30. TransUnion's reports about the Plaintiff contained false information. Plaintiff never encumbered the disputed credit account and was never legally responsible for the repayment of these accounts.

31. The Defendants, in all regards, failed to perform a meaningful and searching inquiry into the substance of Plaintiff's dispute, causing her significant damages.

32. As a result of this negative credit reporting, Plaintiff suffered actual damages.

### TransUnion's Willful Misconduct

33. TransUnion has substantial notice and knowledge of the "mixed file" problems and failures of their business procedures and systems.

34. TransUnion has long been on notice that its procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files are inadequate to protect consumers under the FCRA. *Price v. TransUnion, LLC*, 737 F.Supp.2d 281, 289 (E.D. Pa. Nov. 23, 2010)(finding that at least three courts of appeals and the FTC had construed 1681e(b) against TransUnion in mixed file cases for its failure to use reasonable procedures to assure maximum possible accuracy.).

35. More recently, in March of 2015, TransUnion entered a consent decree with the New York Attorney General consumer affairs division to take certain affirmative steps to improve and escalate its procedures to prevent and to investigate mixed file cases. *In the Matter of The Investigation by Eric T. Schneiderman of Experian Information Solutions, LLC., Equifax Information Services, LLC, and TransUnion, Inc.* htttps://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf, last visited 07/25/2017.

36. A federal jury recently awarded $60 million verdict to a class of plaintiffs in a case that involved TransUnion's mixing of innocent consumers with the names of terrorists and drug dealers. *Ramirez v. TransUnion, LLC.*, Civ. No. 3:12CV632 (N.D.Ca. 2017).

37. Despite law suits, jury verdicts, consent orders with the FTC and Attorneys General, TransUnion's computer system cause these mixes because it does not require or use full

identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. They do this in order to sell more credit reports.

38. TransUnion has knowledge that its computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file."

39. Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought throughout the country, including in this district.

40. TransUnion knowingly choose to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

41. Despite these lawsuits and enforcement actions, TransUnion has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

42. Upon information and belief, TransUnion has not, and does not intend, to modify their procedures to comply with this section of the FCRA because compliance would drastically increase their operating expenses.

43. Accordingly, TransUnion's violations of 15 U.S.C. § 1681e(b) were willful and them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

44. TransUnion's failure to modify its procedures caused substantial harm to the Plaintiff.

## COUNT ONE:
### (Violation of 15 U.S.C. § 1681e(b))
### (TransUnion)

45. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

46. TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

47. As a result of this alleged conduct, action, and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

48. TransUnion's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, TransUnion was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

49. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT TWO:
### (Violation of 15 U.S.C. § 1681i(a)(1))
### (TransUnion)

50. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

51. TransUnion violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file.

52. As a result of this conduct, the Plaintiff suffered actual damages.

53. TransUnion's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

54. The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from TransUnion pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### COUNT THREE:
### (Violation of 15 U.S.C. § 1681i(a)(2))
### (TransUnion)

55. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

56. TransUnion violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received in Plaintiff's dispute letter. The Consumer Financial Protection Bureau has issued guidance requiring consumer reporting agencies to send the relevant information it received from consumers to the furnishers of credit information.

57. As a result of this conduct, the Plaintiff suffered actual damages.

58. TransUnion's conduct, actions, and inaction were willful, rendering TransUnion liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

59. The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the TransUnion pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### COUNT FOUR:
### (Violation of 15 U.S.C. § 1681i(a)(4))
### (TransUnion)

60. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

61. TransUnion violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiff's communications.

62. As a result of this conduct, the Plaintiff suffered actual damages.

63. TransUnion's conduct, actions, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

64. The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from TransUnion pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### COUNT FIVE:
### (Violation of 15 U.S.C. § 1681i(a)(5))
### (TransUnion)

65. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

66. TransUnion violated 15 U.S.C § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified.

67. As a result of this conduct, the Plaintiff suffered actual damages.

68. TransUnion's conduct, actions, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

69. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorneys' fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### COUNT SIX:
### (Violation of 15 U.S.C. §1681s-2(b)(1)(A))
### (MID-SOUTH)

70. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

71. On one or more occasions within the past two years, by example only and without limitation, Mid-South violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

72. When the Plaintiff mailed her disputes to TransUnion, it used a dispute system named, "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as Mid-South. It is an automated system and the procedures used by the CRAs are systemic and uniform.

73. When TransUnion receives a consumer dispute, it (usually via an outsourced vendor) translates that dispute into an "ACDV" form.

74. Upon information and belief, the ACDV form is the method by which Mid-South has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

75. On information and belief, the Plaintiff alleges that to date Mid-South has never complained to TransUnion about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

76. If the furnisher Mid-South receives a consumer dispute ACDV form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

77. Based on the manner in which TransUnion responded to the Plaintiff's disputes, representing that Mid-South had not deleted, and thus had verified the supposed accuracy of its reporting, Plaintiff alleges the TransUnion did in fact forward the Plaintiff's dispute *via* an ACDV to the furnisher, Mid-South.

78. Mid-South understood the nature of the Plaintiff's dispute when it received the ACDV from the credit bureaus.

79. When Mid-South received the ACDV from the credit reporting agencies, it could have reviewed its own system and previous communications with the Plaintiff and discovered additional substance of the Plaintiff's dispute.

80. Notwithstanding the above, Mid-South follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Mid-South does is review its own internal computer screen for the account and repeat back to the ACDV system the same information that they already had reported to the CRAs.

81. When Mid-South receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

82. As a result of Mid-South's violations of 15 U.S.C. §1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

83. The violations by Mid-South were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

84. The law of the 8th Circuit has long required a furnisher has a duty to conduct detailed and searching investigation based on the information it receives in a consumer's FCRA dispute through a CRA.

85. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Mid-South intended their employees or agents to follow.

86. On information and belief, the Plaintiff alleges that the Mid-South's employees or agents did not make a mistake (in the way in which he or she followed Mid-South's procedures) when he or she received, processed and responded to the ACDV.

87. On information and belief, the Plaintiff alleges that Mid-South has not materially changed its FCRA investigation procedures after learning of its failures in this case.

88. In the alternative, Mid-South was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

89.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Mid-South in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT SEVEN:
### (15 U.S.C. § 1681s-2(b)(1)(B))
### (MID-SOUTH)

90.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

91.     On one or more occasions within the past two years, by example only and without limitation, Mid-South violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer report agencies.

92.     As Plaintiff detailed in Count Six, Mid-South has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

93.     Mid-South is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

94.     Mid-South does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

95.     Mid-South understood the Plaintiff's disputes and that the account did not belong to her.

96.     Nevertheless, it ignored such information and instead simply regurgitated the same information they had previously reported to the CRAs.

97. As a result of the Mid-South's violation of 15 U.S.C. §1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

98. The violations by Mid-South was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Mid-South was negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

99. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Mid-South in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT EIGHT:
### (15 U.S.C. § 1681s-2(b)(1)(C) and (D))
### (MID-SOUTH)

100. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

101. On one or more occasions within the past two years, by example only and without limitation, Mid-South violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the its representations within Plaintiff's credit file with Trans Union without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

102. Specifically, Mid-South failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the CRAs.

103. On information and belief, the Plaintiff alleges that Mid-South rarely, if ever, adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

104.   Furthermore, Mid-South knew that the Plaintiff disputed the subject accounts through her dispute letter to Trans Union.

105.   The Plaintiff's disputes were *bona fide* as the account did not belong to the Plaintiff and Mid-South's records did not match the Plaintiff's identifying information.

106.   As a result of Mid-South's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

107.   The violation by Mid-South was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

108.   Mid-South was aware of its obligation to input the correct CCC code when it followed the ACDV procedures used regarding the Plaintiff's dispute.

109.   On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Mid-South intended its employees or agents to follow.

110.   On information and belief, the Plaintiff alleges that Mid-South's employee or agent did not make a mistake (in the way in which he or she followed Mid-South's procedures) when he or she received, processed and responded to the ACDV and did not include the XB code in the CCC field.

111.   On information and belief, the Plaintiff alleges that Mid-South did not materially change its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

112. The violations by Mid-South were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Mid-South was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

113. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Mid-South in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, the Plaintiff demands judgment for compensatory, statutory, and punitive damages against the Defendants; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,

By: _____
Corey D. McGaha
Ark. Bar No. 2003047
William T. Crowder
Ark. Bar No. 2003138
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
Phone: (501) 205-4026
Fax: (501) 367-8208

Susan M. Rotkis
(to be admitted *pro hac vice*)
CONSUMER LITIGATION ASSOCIATES, P.L.L.C.
382 South Convent Avenue
Tucson, AZ 85701
Phone: (520) 622-2481

## Verification

State of Arkansas  )
County of Pulaski  )

Under 28 U.S.C. § 1746, Plaintiff Ina Jean Lohmann, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am the Plaintiff in this civil action.
2. I have read the foregoing Complaint prepared by my attorneys.
3. I believe that all of the facts contained in the Complaint are true, to the best of my knowledge, information, and belief formed after a reasonable inquiry.
4. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
5. I believe that this Complaint is not interposed for any improper purpose, such as to harass any named Defendant, cause unnecessary delay to any named Defendant, or create a needless increase in the cost of litigation to any named Defendant.
6. I have filed this Complaint in good faith and solely for the purposes set forth in it.

I declare under penalty of perjury that the foregoing is true and correct.

This 26 day of July, 2017.

_____
Ina Jean Lohmann